# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**LEGACY ENTERTAINMENT**
**& ARTS FOUNDATION, INC d/b/a**
**LAWYERS MATTER TASK FORCE;**
**BLACK LIVES MATTER TAMPA, LLC;**
**COMMUNITY EQUITY PROJECT;**
**AND LEWANNA GELZER.**

  **Petitioners,**

**V.**                          **Case No.: 6:21-cv-00698**

**RONALD DION DESANTIS, in his official**
**capacity as Governor of the State of Florida;**
**ASHLEY BROOKE MOODY, in her official**
**Capacity as Attorney General of the State of**
**Florida; and JOHN WILLIAM MINA, in his**
**official capacity as Sheriff of Orange County,**
**Florida;**

  **Respondents.**

_____

## <u>VERIFIED MOTION FOR PRELIMINARY INJUCTION AND</u>
## <u>TEMPORARY RESTRAINING ORDER</u>

Petitioners, Legacy Entertainment & Arts Foundation, Inc., d/b/a Lawyers

Matter Task Force ("Lawyers Matter"), Black Lives Matter Tampa, LLC ("BLM

Tampa"), Community Equity Project ("CEP"), and Lewanna Gelzer ("Gelzer")

1

BATES LAW, PLLC
111 North Orange Avenue, Suite 800
Orlando, FL 32801
http://www.fltriallawyers.com

(collectively "Petitioners"), hereby move for a preliminary injunction and temporary restraining order enjoining the application and enforcement of Florida CS/House Bill 1, to be codified in Florida Statutes [ __ ] (Combating Public Disorder Act) (hereinafter the "Anti-Riot Bill" or the "Bill"), and such Florida laws it amends[1] (collectively the "Denounced Laws"), by Governor Ronald Dion DeSantis ("DeSantis"), Attorney General Ashley Brooke Moody ("Moody"), and Orange County Sheriff John Williams Mina ("Mina") (collectively "Respondents"). In support of this motion, Petitioners state as follows:

## INTRODUCTION

"The law is clear that the right to petition one's government for the redress of grievances may be exercised in large groups…and these rights may be exercised by marching, even along public highways." Williams v. Wallace, 240 F. Supp. 100, 109 (D. Ala. 1965). The marches from Selma to Montgomery, Alabama in 1965 protesting the disenfranchisement of Black voters embodies the historical value of participating in organized freedom of expression and assembly protected under the

---

[1] See Florida Statutes §§ 166.241, 316.2045, 768.28, 748.011, 784.021, 784.03, 784.045, 784.07, 806.13, 810.02, 812.014, 870.01, 870.02, and 921.0022.

BATES LAW, PLLC
111 North Orange Avenue, Suite 800
Orlando, FL 32801
http://www.fltriallawyers.com

First Amendment of the United States Constitution. By signing HB 1 into law, Governor Ronald Deon DeSantis actively attempts to stifle the constitutionally protected right to demonstrate under the pretext of preventing "riots" and concern for public safety, speech similarly used by the former Governor of Alabama, George Wallace, and other southern Governors throughout the civil rights era to denounce the 1965 Selma Marches.

The Denounced Laws in HB 1 seek to arrest the peaceful expression of free speech protected by the United States Constitution by: (1) equating peaceful organizing and the support of protest by "acting in furtherance of a riot", "inciting a riot," or "acting with a common intent" with overtly broad definitions; (2) exposing peaceful demonstrators and social justice advocacy organizations to civil and/or criminal liability for the "conditions arising from a riot" caused by conduct that unrelated persons who engage in, regardless of the protestors' or organizations' intent, the likelihood that their speech with result in violence or forceful action, or the imminence of such an action; (4) effectively discouraging any support of peaceful protest "with two or more persons acting with a common intent"; (5) intimidating protestors or organizations from participating in protests by "increasing the offense severity ranking" and "requiring persons arrested for such violation be held in

3

custody until first appearance" for crimes committed in "furtherance of a riot," all in violation of the First, Eighth, and Fourteenth Amendments. A true and exact copy of the Bill is attached to the Complaint as **Exhibit A** (Doc. 1-1) and incorporated herein by reference.

The right of individuals to express themselves on important public issues – including police reform as seen in the aftermath of the murder of George Floyd in 2020 – is a form of expression that "has always rested on the highest rung of First Amendment values." Carey v. Brown, 447 U.S. 455, 467 (1980). The First Amendment exists to "protect the free discussion of governmental affairs," Mills v. State of Alabama, 348 U.S. 214, 218 (1966), and enable "uninhibited, robust, and wide-open" debate on public issues, Watts v. United States, 394 U.S. 705, 708 (1969). This "is more than self-expression; it is the essence of self-government." Garrison v. Louisiana, 379. U.S. 64, 74-75 (1964), and "[e]ffective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association." N.A.A.C.P v. State of Alabama ex rel. Patterson, 357 U.S. 449. 460 (1958).

For the reasons set forth herein, an injunction is necessary to protect the rights of Petitioners and others similarly situated.

4

## STANDARD OF REVIEW

Rule 65 of the Federal Rules of Civil Procedure provides a basis for two separate types of injunctive relief. The principal difference between a Rule 65(a) injunction and a Rule 65(b) restraining order, is the scope and speed of the respective relief offered.   Rule 65(a) provides for a standard preliminary injunction. A preliminary injunction seeks to maintain the status quo until the court makes a ruling on the merits. Moreover, before a preliminary injunction is entered, the opposing party must be given notice and an opportunity to be heard. Rule 65(b) provides the second form of injunctive relief, a temporary restraining order. A temporary restraining order is necessary when the petitioner's relief is needed on an emergent and *ex parte* basis; its duration is finite and brief.

The standard for obtaining relief under either section is the same. Regardless if a party is seeking a preliminary injunction or a temporary restraining order, that party must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm in the absence of the injunction; (3) a threat of harm to it that outweighs whatever injury the proposed injunction may impose upon the opposing party; and (4) if issued, that the injunction would not be averse to the public's interest. See Winter v.

5

NRDC, Inc., 555 U.S. 7, 20, 129 S. Ct. 365, 374 (2008); Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005) and Parker v. State Bd. of Pardons & Paroles, 275 F.3d 1032, 1034-35 (11th Cir. 2001).

## DISCUSSION

Petitioners held a demonstration on or about May 15th, 2021[2], and plan to hold another rally in honor of "Juneteenth"[3] on June 19th, 2021, to protest the deprivation of minorities' civil rights by state actors and the recent signing of civil rights restrictive bills into law. The Anti-Riot Bill was passed in response to protesting resulting from the murders of minorities by the hands of police officers, including the murders of George Floyd, Breonna Taylor, and Elijah McClain. These statutes are unconstitutional on their face and as-applied to Petitioners' planned speech and expressive conduct because: (1) they target protected speech under the First Amendment through use of overly broad and vague definitions which causes the law to be enforced under personal discretion of acting law enforcement or government officials; (2) they are written with the intent of defining any such protest which

---

[2] A true and correct copy of the flyer for the May 15th "Freedom of Speech Rally" is attached hereto as **Exhibit A** and incorporated herein by reference.
[3] JUNETEENTH

BATES LAW, PLLC
111 North Orange Avenue, Suite 800
Orlando, FL 32801
http://www.fltriallawyers.com

voices dissenting opinion or gathers in a public street or highways as a "riot" or participation in such protest as "inciting a riot"; and (3) they retaliate against those subjected to these laws with excessive bail, fines, or increased punishment and penalties as a means of hindering the ability to protest.

HB 1 equates peaceful organizing and support of protest with "acting in furtherance of a riot," or "acting with a comment intent," but leaves an overly broad definition of what constitutes a riot and allows the governing municipal law enforcement agency to act under their own discretion, and allows that agency "to respond to a riot or unlawful assembly in a specified manner based on specified circumstances." Petitioners fear they will be unable to exercise their First Amendment rights under the enforcement of this law due to the history of wrongful discretionary and discriminatory actions and crimes of municipal law enforcement officers toward Black and Brown Americans.

HB1 exposes Petitioners, and other peaceful demonstrators or civil rights observers, to civil and criminal liability for the "conditions arising from a riot," even if said "conditions" are caused by outside agitators or unrelated persons who engage in criminal activity, as seen throughout the country during civil rights protests in 2020 relating to the murder of George Floyd. Judge John A. Woodcock, Jr. states in

7

his opinion of *Sullivan v. City of Augusta* that "an invasion of a legal protected interest" must be "(a) concrete and particularized…and (b) actual or imminent, not conjectural or hypothetical." 511 F.3d 16, 26 (1st Cir. 2007). The allowance of municipal law enforcement to use discretion when defining a riot and arresting those believed to be liable for "conditions arising from a riot" permits varied understanding of threats that may or may not be "actual or imminent" and allows for protentional discrimination of minorities present at said "riot."

The Anti-Riot Bill seeks to effectively discourage and intimidate support of a demonstration "with two or more persons acting with common intent" by "increasing the offense severity ranking" and "requiring persons arrested for such violation be held in custody until first appearance." Under this law, such violations include "standing on or remaining in the street, highway, or road." *Williams v. Wallace* established that protestors would be acting under their fundamental First Amendment rights when marching along US Highway 80 from Selma to Montgomery, and that "a reasonable use of the highways for the purpose of pedestrian marching is guaranteed by the Constitution of the United States." 240 F. Supp. 100 (D. Ala. 1965). Additionally, the opinion established that "the extent of the right to assemble, demonstrate, and march peaceably along the highways and streets in an orderly

8

manner should be commensurate with the enormity of the wrongs that are being petitioned against." Id. at 106. In the case of the Selma marches challenging voter restrictions for African-Americans, the "wrongs [were] enormous." Id. The murders of George Floyd, Breonna Taylor, Eric Garner, Michael Brown, and many others showcase the enormity of wrongs committed by law enforcement officers and the need for continued civil rights protests and demonstrations. Petitioners fear that under this law they will no longer be able to exercise their constitutionally protected right to march and are subjecting themselves to inflammatory violations of fundamental rights that existed during the 1960's civil rights era.

## ANALYSIS

Petitioners request this Court enter an order enjoining enforcement of the Anti-Riot Bill because: (a) the definitions provided in an attempt to clarify what constitutes a riot, aggravated riot, or inciting of a riot or aggravated riot; (b) provisions that force civil liability onto those who lawfully express their first amendment rights in the form of a peaceful demonstration that may turn into a "riot" despite no intent to incite a riot or promote force; and (c) refusing those arrested for such violations the right to bail until after their first court appearance. Petitioners

9

have provided, and plans to provide additional funding, networking, and other encouragement to individuals who plan to peacefully exercise free speech rights. Petitioners are not inciting any individuals to commit imminent violent or forceful actions constituting a "riot". To the contrary, Petitioners advocate against the use of violence while promoting peaceful free speech demonstrations. Petitioners plan to advise and encourage others to exercise their free speech rights through peaceful methods once the Court enjoins enforcement of the Anti-Riot Bill.

To satisfy the test for an injunction, a plaintiff must demonstrate the following four factors: "(1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." McDonalds Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998); see also eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006). "This standard is essentially the same as the standard for a preliminary injunction, 'except that the movant must establish actual success on the merits, as opposed to a likelihood of success.'" Wilson, 2008 U.S. Dist. LEXIS 20017, *1.

10

Petitioners have a clear legal right to the requested relief under the First, Eighth and Fourteenth Amendments of the United States Constitution. U.S.C.S. Const. Amend. 1, VIII, and XIV. Specifically, the Anti-Riot Bill is unconstitutional on its face and as-applied to Petitioners' planned speech and expressive conduct because: (1) they target protected speech under the First Amendment; (2) they are written with the intent of defining any such protest as a "riot" or participation in such protest as "inciting a riot"; and (3) they retaliate against those subjected to these laws with excessive bail, fines, or cruel and unusual punishment as a means of hindering the speech of dissenting opinions.

I.      Likelihood of Success & Irreparable Harm.

In the Eleventh Circuit, a likelihood of success on the merits goes hand in hand with a determination of irreparable harm, as "irreparable injury may be presumed from the fact of discrimination and violations of [civil rights] statutes." Gresham v. Windrush Partners, Ltd., 730 F.2d 1417, 1423 (11th Cir. 1984); see also United States v. Hayes International Corporation, 415 F.2d 1038, 1045 (5th Cir. 1969) ("[I]rreparable injury should be presumed from the very fact that the statute has been violated."). The same court went on to hold "that when a plaintiff who has standing

11

to bring suit shows a substantial likelihood that a defendant has violated specific [civil rights] statutes and regulations, that alone, if unrebutted, is sufficient to support an injunction remedying those violations." Id.  Such a showing also gives rise to a presumption of future violations and harm.  See Silver Sage v. City of Desert Hot Springs, 251 F. 3d 814, 826-827 (9th Cir. 2001).

In the Eleventh Circuit, irreparable harm is presumed when there is an ongoing violation of the First Amendment. Siegel v. LePore, 234 F.3d 1163, 1178 (11th Cir. 2000); see also Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville, 896 F.2d 1283, 1285 (11th Cir. 1990); and Hohe v. Casey, 868 F.2d 69, 73 (3d Cir. 1989) ("The assertion of First Amendment rights does not automatically require a finding of irreparable injury, thus entitling a plaintiff to a preliminary injunction if he shows a likelihood of success on the merits. Rather, … it is the 'direct penalization, as opposed to incidental inhibition, of First Amendment rights [which] constitutes irreparable injury.'").  Moreover, "[w]hen the evidence shows that the defendants are engaged in, or about to be engaged in, the act or practices prohibited by a statute which provides for injunctive relief to prevent such violations, irreparable harm to the plaintiffs need not be shown." Star Fuel Marts, LLC v. Sam's East, Inc., 362 F.3d 639, 651 (10th Cir. 2004) (citations omitted).

12

As a result of Respondents' planned enforcement of the Anti-Riot Bill, Petitioners "actual or threatened deprivation of civil rights may be enjoined." Petitioners have a substantial likelihood of success on the merits as Respondents' enactment and enforcement of the Anti-Riot Bill clearly violates Petitioners' constitutional rights under the First, Eighth, and Fourteenth Amendments of the U.S. Constitution. The ongoing enforcement of the unconstitutional provisions of the Anti-Riot Bill gives rise to a presumption of irreparable injury to Petitioners and their constitutionally-protected First Amendment rights. Siegel v. LePore, 234 F.3d at 1178.

II.    Injury to Petitioners outweighs any injury to Respondents.

The damages to Petitioners far outweigh any costs or harm that might befall Respondents were this Court to order Petitioners' requested relief. Exercising their First Amendment rights could subject Petitioners to felony prosecution, imprisonment without bail, or loss of life without compensation. (CITE). However, Respondents suffer no harm by the granting of an injunction and staying enforcement of HB1. HB1 does not proscribe any new criminal conduct or category of criminal conduct. *Any* crime prosecutable under HB1 is already prosecutable under the criminal laws of the State of Florida.

13

BATES LAW, PLLC
111 North Orange Avenue, Suite 800
Orlando, FL 32801
http://www.fltriallawyers.com

III.    <u>An injunction would not be adverse to the public interest</u>.

Regarding the public interest prong, granting injunctive relief advances the public interest because it "benefit[s] not only the claimant but all other persons subject to the practice or rule under attack." <u>Sandford v. R.L. Coleman Realty Co., Inc.</u>, 573 F.2d 173, 178 (4th Cir. 1978).  Defendants' interest in stopping peaceful demonstration is subservient to the preemptive effect of the federal civil rights laws as enacted by Congress. <u>See</u> <u>Alexander v. Gardner-Denver Co.</u>, 415 U.S. 36, 51 (1974) ("Title VII's strictures are absolute and represent a Congressional command that each employee be free from discriminatory practices.'). Congress and the courts have emphatically declared that the public interest is served by effective enforcement of the federal civil rights laws.

## LOCAL RULE 3.01(H) REQUEST FOR HEARING

Pursuant to L.R. 3.01(h), Petitioners hereby request an evidentiary hearing and oral argument on the instant motion. Petitioners estimate that said hearing will take no longer than one (1) hour.

14

BATES LAW, PLLC
111 North Orange Avenue, Suite 800
Orlando, FL 32801
http://www.fltriallawyers.com

**WHEREFORE**, Petitioners hereby respectfully request that this Court enter an order enjoining enforcement of the Anti-Riot Bill because: (a) the definitions provided in an attempt to clarify what constitutes a riot, aggravated riot, or inciting of a riot or aggravated riot; (b) provisions that force civil liability onto those who lawfully express their first amendment rights in the form of a peaceful demonstration that may turn into a "riot" despite no intent to incite a riot or promote force; and (c) refusing those arrested for such violations the right to bail until after their first court appearance.

**[VERIFICATION ON NEXT PAGE]**

15

BATES LAW, PLLC
111 North Orange Avenue, Suite 800
Orlando, FL 32801
http://www.fltriallawyers.com

## **<u>Verification</u>**

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

By: **Shannon Ligon**
For: **Lawyers Matter Task Force**
Date: **5/14/21**

Respectfully submitted this 16th day of May, 2021.

s/Aaron Carter Bates_____
Aaron Carter Bates
Florida Bar No. 011749
Bates Law PLLC
111 N. Orange Ave., Suite 834
Orlando, FL 32801
Phone: (407) 476-0620 ex.1620
Fax: (407) 627-1293
abates@fltriallawyers.com


Camara Williams, Esq.
Florida Bar No. 0077133
cwilliams@swtglaw.com
Divinne Smith, Esq
Florida Bar No. 0064907
dsmith@swtglaw.com
SMITH & WILLIAMS TRIAL GROUP PLLC
2295 South Hiawassee Road, Suite 318
Orlando, Florida 32835
Telephone:  888-798-4529
Mobile: 407-719-0619
Facsimile:  321/221.7633

**Counsel for Petitioners**

16

Bates Law, PLLC
111 North Orange Avenue, Suite 800
Orlando, FL 32801
http://www.fltriallawyers.com

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 16th day of May, 2021 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to all parties or in some other authorized manner for those counsel or parties who are not authorized to receive notices electronically.

s/Aaron C. Bates_____
Aaron C. Bates, Esq.

17

BATES LAW, PLLC
111 North Orange Avenue, Suite 800
Orlando, FL 32801
http://www.fltriallawyers.com