UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**LEGACY ENTERTAINMENT & ARTS FOUNDATION, INC., FICTITIOUS PLAINTIFF 1, LAWANNA GELZER, BLACK LIVES MATTER TAMPA, LLC and COMMUNITY EMPOWERMENT PROJECT, INC.,**

    **Plaintiffs,**

v.              Case No: 6:21-cv-698-PGB-DCI

**JOHN WILLIAM MINA, RONALD DION DESANTIS and ASHLEY BROOKE MOODY,**

    **Defendants.**

## ORDER

Plaintiffs move for the Court to issue an *ex parte* temporary restraining order ("**TRO**") enjoining the application and enforcement of Florida CS/House Bill 1. (Doc. 14 (the "**Motion**")).[1] Upon consideration and review, Plaintiffs' request will be denied.

---

[1] Plaintiffs' Motion also requests a preliminary injunction. The Court defers consideration of that request until Defendants receive the opportunity to be heard. *See* FED. R. CIV. P. 65(a)(1) ("The court may issue a preliminary injunction only on notice to the adverse party.").

I.   **BACKGROUND**

This action is a facial and as-applied challenge to CS/HB 1: Florida's Combating Public Disorder Law, also referred to as the Anti-Riot Law ("**HB 1**"). (Doc. 14-1). Among other things, HB 1: (1) redefines "riot" and creates a new felony for "aggravated rioting"; (2) comprehensively lists crimes that may occur during a riot, with increased penalties; (3) makes it a felony to damage a memorial or historic property; (4) prohibits bail for alleged rioters until their first appearance in court; and (5) creates an affirmative defense to civil liability where the victim participated in a riot. (*Id.*). Defendant DeSantis signed HB 1 into law on April 19, 2021. (Doc. 5, ¶ 15).

Plaintiffs are nonprofit advocacy organizations dedicated to the promotion of racial justice. They argue that HB 1 "attempts to stifle the constitutionally protected right to demonstrate under the pretext of preventing 'riots.'" (Doc. 11, p. 3). On April 30, 2021, they filed an Amended Complaint alleging violations of the First, Eighth, and Fourteenth Amendments. (Doc. 5). In the instant Motion, Plaintiffs seek a TRO enjoining the application and enforcement of HB 1. (Doc. 14).

II.   **STANDARD OF REVIEW**

The Federal Rules of Civil Procedure provide that a district court may issue a temporary restraining order without notice to the adverse party or its attorney if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b)(1). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

To obtain a temporary restraining order, a party must prove "(1) [there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (citation omitted). A temporary restraining order "is an extraordinary and drastic remedy not to be granted unless the movant clearly establishe[s] the 'burden of persuasion' as to each of the four prerequisites." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)).

### III. DISCUSSION

As argued, the Motion fails to demonstrate a substantial likelihood of success on the merits. *Cf. ACLU of Ill. v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012) ("[I]n First Amendment cases, the likelihood of success on the merits will often be the determinative factor."). Plaintiffs' analysis of the particular constitutional

3

issues presented here is too thin and conclusory to justify the extraordinary remedy of a TRO.

The fatal flaw of Plaintiffs' Motion is that they take for granted that HB 1 is unconstitutional—it may well be, but Plaintiffs do not explain how or why. According to Plaintiffs:

> These statutes [*i.e.*, HB 1] are unconstitutional on their face and as-applied to Petitioners' planned speech and expressive conduct because: (1) they target protected speech under the First Amendment through use of overly broad and vague definitions which causes the law to be enforced under personal discretion of acting law enforcement or government officials; (2) they are written with the intent of defining any such protest which voices dissenting opinion or gathers in a public street or highways as a "riot" or participation in such protest as "inciting a riot"; and (3) they retaliate against those subjected to these laws with excessive bail, fines, or increased punishment and penalties as a means of hindering the ability to protest.

(Doc. 14, pp. 6–7). The standard for issuing a TRO requires Plaintiffs to engage with the statute and its constitutional implications on a deeper level than this. It is not enough to raise generalized concerns with the statute and conclude that the statute infringes upon free expression. Plaintiffs must point to the specific provision (or provisions) that they argue are overbroad, vague, or retaliatory.

Furthermore, Plaintiffs must explain *how* those specific provisions are unconstitutional by directing the Court to supporting precedent. The only caselaw cited in the Motion supports the unremarkable proposition that open debate and public protests are central to the First Amendment. (*See* Doc. 14, p. 4). This does little to advance Plaintiffs' case. Among other things, Plaintiffs must articulate the

legal standards for: (1) as-applied and facial challenges; (2) the overbreadth and vagueness doctrines; (3) incitement; (4) severability; and (5) standing.

Finally, Plaintiffs must apply the articulated standards to the challenged provisions. It is not the Court's role to advocate on a litigant's behalf, especially in the context of an *ex parte* motion. The Court therefore declines to fill the analytical gaps in Plaintiffs' arguments.

In light of these deficiencies, the Court is unable to find that Plaintiffs are substantially likely to succeed on the merits. Because Plaintiffs have not met their burden of persuasion, their Motion is due to be denied.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiffs' Motion for a Temporary Restraining Order (Doc. 14) is **DENIED**;
2. To the extent that Plaintiffs also request a Preliminary Injunction (*Id.*), the Motion is **DENIED WITHOUT PREJUDICE**;
3. Plaintiffs may file a renewed Motion for Preliminary Injunction that cures the deficiencies in this Order;
4. Five (5) business days after Defendants are served with a renewed Motion for Preliminary Injunction, Defendants may file one consolidated response to the Motion and include any opposing declarations or affidavits. *See* Local Rules 3.01(b), 3.01(f), & 4.06(b)(3);

5. Three (3) business days after Defendants respond, Plaintiffs may file a reply to Defendants' response. Plaintiffs' reply shall be directed only to Defendants' response; shall not include any new issues, rebuttal affidavits, or other evidence in support; and shall not exceed five (5) pages; and

6. The Court will schedule a hearing of this matter after Defendants have been properly served.

**DONE AND ORDERED** in Orlando, Florida on May 18, 2021.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

6