**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**LEGACY ENTERTAINMENT & ARTS
FOUNDATION, INC d/b/a LAWYERS
MATTER TASK FORCE, et al.**

      Plaintiffs,

**v.**                         **Case No.: 6:21-CV-00698**

**RONALD DION DESANTIS, in his
Official Capacity as Governor of the
State of Florida, et al.**

      Defendants.

_____/

**ATTORNEY GENERAL'S MOTION TO DISMISS AND
INCORPORATED MEMORANDUM OF LAW**

Pursuant to Rule 12(b)(1) and 12(b)(6), Defendant, the Attorney General of Florida, moves to dismiss Plaintiffs' Amended Complaint. Doc. 5.

**BACKGROUND**

Every American has the right to peacefully demonstrate. No person, however, has the right to engage in violence or destroy property. Around the summer of 2020, protests broke out across the nation, and many Americans exercised their First Amendment rights to have their voices heard. Others, however, attacked innocent police officers and civilians and destroyed property, including government buildings and small businesses.

On April 19, 2021, the Governor of Florida signed House Bill 1 (HB 1). Two days later, Plaintiffs commenced this action. Doc. 1. They sue the Governor, the Attorney General, and Sheriff John Mina, asserting both facial and as-applied challenges and alleging that the bill violates their First Amendment right to free speech (Count 1); the Eighth Amendment's prohibition on excessive bail and cruel and unusual punishment (Count II); and their Fourteenth Amendment right to due process (Count III).

HB 1 amends various criminal laws, including Florida's laws against riots and affrays—laws that have existed for decades and that have never been struck down as unconstitutional. HB 1's amendments to the laws—which Plaintiffs focus on in their amended complaint—are straightforward:

```
743        870.01  Affrays and riots.—
744        (1)  A person commits an affray if he or she engages, by
745    mutual consent, in fighting with another person in a public
746    place to the terror of the people. A person who commits All
747    persons guilty of an affray commits shall be guilty of a
748    misdemeanor of the first degree, punishable as provided in s.
749    775.082 or s. 775.083.
```

```
750        (2)   A person commits a riot if he or she willfully
751   participates in a violent public disturbance involving an
752   assembly of three or more persons, acting with a common intent
753   to assist each other in violent and disorderly conduct,
754   resulting in:
755        (a)   Injury to another person;
756        (b)   Damage to property; or
757        (c)   Imminent danger of injury to another person or damage
758   to property.
759
760   A person who commits All persons guilty of a riot commits, or of
761   inciting or encouraging a riot, shall be guilty of a felony of
762   the third degree, punishable as provided in s. 775.082, s.
763   775.083, or s. 775.084.
```

Doc. 1-1.

The amended complaint should be dismissed. The Attorney General is not a proper defendant under *Ex Parte Young*, Plaintiffs have failed to establish any of the requirements of Article III standing, and the claims fail as a matter of law.

## MEMORANDUM OF LAW

### ARGUMENT

### I.   Eleventh Amendment Sovereign Immunity Bars Suit Against the Attorney General

"Pursuant to the Eleventh Amendment, a state may not be sued in federal court unless it waives its sovereign immunity or its immunity is abrogated by an act of Congress under section 5 of the Fourteenth Amendment." *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011). But under

*Ex Parte Young,* 209 U.S. 123, 168 (1908), certain suits alleging violations of the federal constitution, filed against a state official in his official capacity for injunctive relief on a prospective basis, are not considered to be suits against the state that violate the Eleventh Amendment. *Ex Parte Young*, 209 U.S. 123 (1908).

A state official is subject to suit in his official capacity only "when his office imbues him with the responsibility to enforce the law or laws at issue in the suit." *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011); *see Wusiya v. City of Miami Beach*, 614 F. App'x 389, 393 (11th Cir. 2015). "Federal courts have refused to apply Ex [P]arte Young where the officer who is charged has no authority to enforce the challenged statute." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1342 (11th Cir. 1999). Furthermore, the enforcement authority must be specific. The official's "general executive power" is "not a basis for jurisdiction in most circumstances." *Women's Emergency Network v. Bush*, 323 F.3d 937, 949 (11th Cir. 2003); *see ACLU v. Florida Bar*, 999 F.2d 1486,1490 (11th Cir. 1993) (Florida Bar was proper defendant because of its "authority to seek sanctions" for violations of ethics rules).

As to suits against a state attorney general, the Supreme Court has explained that if state statutes could be challenged by suing the attorney general on the theory that she "might represent the state in litigation involving the enforcement of its statutes," it would eviscerate "the fundamental principle

that [States] cannot, without their assent, be brought into any court at the suit of private persons." *Ex Parte Young*, 209 U.S. at 157.

Plaintiffs allege that suit is proper against the Attorney General because she is the "chief law enforcement officer and representative of the State in 'all suits or prosecutions, civil of criminal or in Empowerment,' brought or opposed by the State." Doc. 5 at ¶ 6.[1]

The Attorney General is the "chief state legal officer." Art. IV, § 4(b). She has the authority to intervene in cases "in which the state may be a party, or in anywise interested." Fla. Stat. § 16.01(4). However, this authority is discretionary. *See Mallory v. Harkness*, 923 F. Supp 1546, 1553 (S.D. Fla. 1996) ("It has long been recognized that the [Attorney General] is not a necessary party each time the constitutionality of a statute is drawn into question… The [Attorney General] is thus not affirmatively required to intervene every time an entity challenges the constitutionality of a statute." (citations omitted)), aff'd without opinion, 109 F.3d 771 (11th Cir. 1997). In fact, forcing the Attorney General to defend the constitutionality of a statute would effectively eliminate her unreviewable discretion to intervene. *See State ex.rel. Landis v. S.H. Kress & Co.*, 155 So. 823, 826 (Fla. 1934).

---

[1] Although Plaintiffs generally cite to Chapter 16, Florida Statutes, it is unclear which specific provision of Chapter 16 they rely on in contending that the Attorney General is a proper defendant.

The Attorney General's discretionary authority is a general executive power and does not constitute a sufficient connection to make her a proper defendant. *See Women's Emergency Network*, 323 F.3d at 949-50; *see Osterback v. Scott*, 782 F. App'x 856, 859 (11th Cir. 2019) (holding that Florida Governor's "general authority to enforce Florida's laws" did not make him a proper party).

HB 1 also does not provide the Attorney General with specific enforcement authority. While HB 1 touches upon several criminal statutes, the Attorney General does not have the general authority to prosecute criminal cases. Under Florida's Constitution, it is the locally elected state attorney—not the Attorney General—who is "the prosecuting officer of all trials courts in [each judicial] circuit." Art V., s. 17, Fla. Const.; *State v. Barritt*, 531 So. 2d 338, 342 (Fla. 1988) ("[T]he state attorney has complete discretion in deciding whether and how to prosecute."); *see also, Roberts v. Bondi*, 2018 WL 3997979, at *2 (M.D. Fla. Aug. 21, 2018) (rejecting argument that Attorney General is a proper party simply because "the challenged law is a criminal statute").

Nor does the Attorney General's authority to appoint Florida's Statewide Prosecutor make her a proper defendant. Florida statutes assign the Statewide Prosecutor jurisdiction over certain statutorily enumerated offenses that are "occurring, or [have] occurred" in multiple state judicial circuits "as part of a related transaction" or in connection "with an organized criminal conspiracy." § 16.56(1)(a), Fla. Stat. But none of the crimes in HB 1, with the exception of

burglary, fall within the prosecutorial authority of the Statewide Prosecutor, and Plaintiffs have raised no specific challenge to the burglary statute, nor have they alleged any risk of punishment under the statute, much less that they face a risk of prosecution by the Statewide Prosecutor for engaging in "related transactions" or "an organized criminal conspiracy" across judicial circuits. *See* Fla. Stat. § 16.56(1)(a).

In short, any connection between the Attorney General and enforcement of HB 1 is so tenuous that an injunction against the Attorney General would not remedy any injury alleged by Plaintiffs. She should be dismissed.[2]

## II.    There is no case or controversy

Article III of the United States Constitution provides that the court's jurisdiction is limited to actual cases and controversies. *Elend v. Basham*, 471 F.3d 1199, 1204-05 (11th Cir. 2006). In order to meet this requirement, the plaintiff must show that he has standing and that the case is ripe for review. *Id.* In pre-enforcement challenges, the standing and ripeness inquiries tend to

---

[2] If this Court were to dismiss the Attorney General but otherwise permit Plaintiffs' claims to proceed, the Attorney General would seek leave to intervene on behalf of the State of Florida to defend the constitutionality of HB 1. *See, e.g.*, 28 U.S.C. § 2403(b). Although the Attorney General is not a proper defendant, she has discretion, as Florida's chief legal officer, to defend the state's laws as an intervenor. She desires and intends to offer a robust defense of the statute, but because the *Ex Parte Young* analysis is similar to the standing analysis, *see* Section II.A.ii.2, the Attorney General's status as an improper defendant is not waivable.

converge. *Id.* at 1205. Here, both standing and ripeness deficiencies require dismissal.

## A. Plaintiffs lack standing

To establish standing, the Plaintiff must show (1) injury in fact that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between that injury and the complained-of conduct; and (3) redressability, meaning a favorable decision would eliminate the injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiffs have established neither injury, traceability, nor redressability.

### i.      Threshold Matter: Organizational Plaintiffs Lack Standing

Organizations can establish standing to sue either on their own behalf or on behalf of their members. "[A]n organization has standing to sue on its own behalf if the defendant's illegal acts impair its ability to engage in its projects by forcing the organization to divert resources to counteract those illegal acts." *Georgia Latino All. for Hum. Rts. v. Governor of Georgia*, 691 F.3d 1250, 1260 (11th Cir. 2012).  In order to establish associational standing to sue on behalf of its members, the organization must show that their members would have standing to sue in their own right. *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1248 (11th Cir. 2020). The organizational Plaintiffs have established neither.

First, the challenged provisions of HB 1 do not apply to organizations—they apply to individuals. As such, HB 1 does not, and cannot, inflict any legally cognizable injury on them. The organizational Plaintiffs also have not shown any diversion of resources as a result of HB 1. Rather, they allege that they "organized, encouraged, and funded peaceful demonstrations" and that as part of their preparation they "expended personal private financial resources." Doc. 5 at ¶¶ 61–62. They have not alleged that these expenditures were caused by HB 1, nor have they "explained what activities" the expenditures were "divert[ed] . . . away from." *See Jacobson*, 974 F.3d at 1250. In fact, the expenditures are seemingly a normal part of the organizations' activities. *See Ass'n of Cmty. Organizations for Reform Now v. Fowler*, 178 F.3d 350, 359 (5th Cir. 1999) (expenditures must be caused by the alleged illegal action rather than the normal operations of the organization).

Second, the organizational plaintiffs do not have associational standing. There are no allegations that the organizations even have members. This is fatal to any argument for associational standing. *Jacobson*, 974 F.3d at 1249. Even if the organizational Plaintiffs had members, as discussed below, the members would not have standing to sue in their own right.

ii.   **Plaintiffs Lack Standing as to All Claims**

Plaintiffs lack standing as to all three counts. Plaintiffs' asserted injuries are entirely hypothetical and speculative and any injuries are not traceable to

9

or redressable by the Attorney General.

1. In a pre-enforcement challenge to avoid future injuries, the plaintiff must show a "realistic danger of sustaining injury as a result of the statute's operations or enforcement." *Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1245 (11th Cir. 1998) (quoting *Am. Civil Liberties Union. The Fla. Bar (ACLU)*, 999 F.2d 1486, 1492, (11th Cir. 1993)). A plaintiff can meet this standard by showing 1) he was threatened with application of the statute; 2) application is likely; or 3) there is a credible threat of application. *Id.*

a. Plaintiffs have not alleged that they have been threatened with prosecution under HB 1. Rather, their First Amendment allegations are premised on the notion that HB 1 chilled their speech due to the threat of prosecution and civil liability. Specifically, Plaintiffs allege that they "intended to exercise their right to assemble and peacefully demonstrate" on April 24 and May 15 but that HB 1 "effectively barred them from" doing so. Doc. 5 at ¶¶29-31, 60; *id.* at ¶¶ 31, 40 (alleging that they "fear prosecution" and "criminal and civil liability" for engaging in "peaceful demonstrations"). For several reasons, that is not sufficient to establish that Plaintiffs face a likely, or credible, threat of prosecution.

First, Plaintiffs cannot establish injury because engaging in a peaceful demonstration is not "arguably forbidden" by HB 1. *See Harrell v. The Fla. Bar*, 608 F.3d 1241, 1260 (11th Cir. 2010) (holding that "[i]n the context of . . . First

10

Amendment claims," a plaintiff must show that he seeks to engage in expression "that is at least arguably forbidden by the pertinent law"). Nothing in HB 1 penalizes peaceful protest—indeed, HB 1 specifically provides that it "does not prohibit constitutionally protected activity such as a peaceful protest." Doc. 1-1 at 33.

Pursuant to section, 870.01(2), a person commits a riot when he "*willfully* participates in a violent public disturbance involving an assembly of three or more persons, acting with a *common intent* to assist each other in violent and disorderly conduct." Fla. Stat. §870.01(2) (emphasis added). Absent Plaintiffs' willful participation in violence or acting with common intent to engage in violent and disorderly conduct, their peaceful expression is not arguably forbidden. The crime of mob intimidation similarly includes a "common intent" requirement. Fla. Stat. §784.0495(1). Given the definitions of these crimes as compared to Plaintiffs stated intent to demonstrate peacefully, there is not a credible threat that Plaintiffs will be prosecuted. This is particularly true for the plaintiff organizations who are not subject to civil or criminal penalties.

Second, Plaintiffs subjective fears are not objectively reasonable and are based entirely on hypothetical and speculative injury. Plaintiffs presume that while they are peacefully protesting, a riot as defined in section 870.01 will occur, that they will be present, that law enforcement will misunderstand or arbitrarily apply the law and they will be arrested. That is too much

speculation to support standing. The court must speculate not only as to future events that may or may not happen but also as to the actions of independent third parties (both law enforcement and other protesters). *See Hallendale Pro. Fire Fighters Loc. 2238 v. City of Hallandale*, 911 F.2d 756, 762 (11th Cir. 1991); *Clapper v. Amnesty Int'l*, 568 U.S. 398, 413 (2013) ("[W]e have been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment.").

Importantly, Plaintiffs' mere assertion that HB 1 has a chilling effect is not sufficient to demonstrate an injury. They must show that their fear is objectively reasonable, and they cannot do so here. *See Pittman v Cole*, 267 F.3d 1269, 1284 (11th Cir. 2001); *Laird v. Tatum*, 408 U.S. 1, 1225-36 (1972).

Finally, Plaintiffs recently stated in a pleading (their Motion for Preliminary Injunction and Temporary Restraining Order) that they "held a demonstration on or about May 15, 2021 and plan to hold another rally…. on June 19, 2021," demonstrating that their rights have not in fact been chilled by HB 1. Doc. 14 at 6.

b. Nor can Plaintiffs establish that they are injured because, in their view, HB 1 is vague. They contend that HB1 "cannot be enforced in a consistent manner and invite[s] arbitrary and discriminatory enforcement set to deter constitutionally protected speech." Doc. 5 at ¶ 70. "But mere fear of unconstitutional action alone . . . is too speculative an injury to confer

12

standing." *See Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1381–82 (11th Cir. 2019) ("The Club might also suggest that the Ordinance contains vague language that causes it to fear that the City will enforce it arbitrarily, and is thereby injured.  But mere fear of unconstitutional action alone on the part of the City is too speculative an injury to confer standing to the Club.").

c. Lastly, in regards to the Eighth Amendment claims, the organizations themselves cannot show injury-in-fact as they are not subject to arrest or conviction. And Plaintiffs have made no allegations that the individual Plaintiff or any organizational members have been arrested or convicted. Any future arrest of the individual Plaintiff or any members while peacefully protesting is too speculative to provide standing.

2. Plaintiffs have also failed to establish traceability or redressability as to the Attorney General.  Article III standing requires an even more rigorous analysis than *Ex Parte Young. See Jacobson*, 974 F.3d at 1256. Therefore, because Plaintiffs cannot establish that the Attorney General is a proper defendant under *Ex Parte Young*, they cannot establish traceability or redressability. Plaintiffs' purported injury is not "fairly traceable" to the Attorney General because she has no enforcement authority over the laws that they challenge, and an injunction against her therefore will not redress the injury. *See id.*; *Lewis v. Governor of Ala.*, 944 F.3d 1287 (11th Cir. 2019) (en

13

banc) (rejecting the plaintiffs' argument that they had standing to sue the Alabama Attorney General because he has broad authority to act in the public interest).

## B. The Action is Not Ripe

The ripeness doctrine keeps courts from deciding cases prematurely. *Beaulieu v. City of Alabaster*, 454 F.3d 1219, 1227 (11th Cir. 2006). It differs from standing as it relates to the timing of the suit as opposed to whether the party can bring suit. *Elend*, 471 F.3d at 1202. In determining whether a claim is ripe, a court evaluates the fitness of the issues for judicial review and the hardship to the parties of withholding consideration. *Pittman*, 267 F.3d at 1288. Both factors militate in favor of concluding that this action is not ripe.

First, "claims are less likely to be considered 'fit' for adjudication when they venture beyond purely legal issues or when they require 'speculation about contingent future events.'" *Id.* at 1278; *see also Texas v. United States*, 523 U.S. 568, 580-81 (1985) (A claim is not ripe if it rests upon "contingent future events that may not occur as anticipated or indeed may not occur at all."); *Club Madonna*, 924 F.3d at 1381 ("Eighth Amendment challenges are generally not ripe until the imposition, or immediately impending imposition, of a challenged punishment or fine."). And here, all of Plaintiffs' claims are based entirely on speculation and hypothetical scenarios, such as them being arrested or imprisoned for peacefully protesting.

Second, "[h]ardship can sometimes be established if a plaintiff demonstrates that he would have to choose between violating an allegedly unconstitutional statute or regulation and risking criminal or severe civil sanctions." *Elend*, 471 F.3d at 1212.   In this circumstance, "plaintiffs must still demonstrate a 'credible threat of prosecution.'" *Id.*  Plaintiffs cannot do so. And they do not have to choose between engaging in their expressive conduct and risking penalties under HB 1 as their intended expressive conduct is not reasonably within the scope of conduct prohibited by HB 1.

## III.   Plaintiffs Failed to State a Claim

For all of their claims, Plaintiffs have failed to provide a short and plain statement showing that they are entitled to relief. Fed. R. Civ. P. 8 (a)(2).  They allege that they are bringing both facial and as-applied challenges to HB 1. But it is clear that they have brought only a facial challenge, as demonstrated by the sweeping relief they seek. Thus, irrespective of their allegations, they should be held to the standard of a facial challenge. *See Am. Fed'n of State, Cty. & Mun. Employees Council 79 v. Scott*, 717 F.3d 851, 863 (11th Cir. 2013) (explaining that "the label is not what matters," because when plaintiffs seek "an injunction [that] reach[es] beyond the particular circumstances of these plaintiffs," they "must . . . satisfy [the] standards for a facial challenge to the extent of that reach").

### A. Plaintiffs Failed to State of Claim Under the First Amendment

Plaintiffs assert that HB 1 violates the First Amendment because it imposes content-based restrictions, defies *Brandenburg*, and is overly broad. All three arguments fail.

1. Plaintiffs make bald assertions that HB 1 consists of "content-based regulations that prohibit … speech meant to accomplish a political goal." Doc 5 at ¶ 49. But they fail to cite any specific provision of HB 1 to support this contention—because no such provision imposes content-based regulations. HB 1 imposes no penalties on those who simply express a viewpoint or engage in political speech. Rather, it penalizes riots and other violent conduct—conduct that Florida has penalized for *decades*. *See State v. Beasley*, 317 So. 2d 750, 752 (Fla. 1975) (rejecting constitutional challenge to Florida's riot statute, which HB 1 amends).

2. Plaintiffs' assertion that HB 1 suppresses speech protected by *Brandenburg v. Ohio* is without merit. 385 U.S. 444 (1969). The Supreme Court in *Brandenburg* found the state may not "forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Id.* at 447. The court differentiated between "mere abstract teachings of doctrines" and "preparing a group for violent action" and found that "a statute which fails to draw this distinction impermissibly intrudes upon

the freedoms guaranteed by the First and Fourteenth Amendments. *Id.* at 448.

HB 1 does not prohibit the mere teachings of abstract actions—it prohibits only lawless action, violence, and action directed at producing imminent lawless action.[3] In other words, it prohibits conduct that does not enjoy First Amendment protection and is subject to restriction such as advocacy intended and likely to incite imminent lawless action, fighting words, true threats, and speech presenting grave and imminent threat that the government has the power to prevent. *See Burroughs v. Corey*, 92 F. Supp.3d 1201, 1208 (11th Cir. 2015); *Virginia v. Black*, 538 U.S. 343, 359 (2003);

3. Finally, HB 1 is not facially invalid.  Under the overbreadth doctrine a statute is facially invalid if it prohibits a substantial amount of protected speech. *United States v. Williams*, 553 U.S. 285, 292 (2008).  When determining whether a statute is overbroad, the court must construe the statute and determine whether the statute "criminalizes a substantial amount of protected

---

[3] *See e.g.* Doc. 1-1 at 31 (person commits a riot when they engage in violent or disorderly conduct that results in injury or damage to property or imminent danger of injury to person or property); *Id.* (person commits an aggravated riot if they cause great bodily harm to someone who is not participating in the riot; causes property damage; displays, uses, threatens to use, or attempts to use a deadly weapon; or by force or threat of force endangers the safe movement of a vehicle on a public street, highway or road); Doc 1-1 at 32 (inciting a riot requires a resultant riot or imminent danger of a riot); *Id.* (aggravated inciting a riot requires greatly bodily harm, property damage, provision of a deadly weapon with intent to use the weapon in a riot for an unlawful purpose); Doc 1-1 at 30 (crime of cyber intimidation requires speech that incites violence or threatens or harasses someone placing them in reasonable fear of bodily harm).

expressive activity." *Id.* HB 1, however, is limited to proscribing conduct that falls outside First Amendment protection. It does not criminalize any protected activity, much less a substantial amount.

### B. Plaintiffs Failed to State a Claim Under the Eighth Amendment

Plaintiffs' Eighth Amendment claims require a plaintiff to be subject to arrest, and a claim for cruel and unusual punishment further requires the plaintiff to be convicted of a crime. *See Ingraham v. Wright*, 430 U.S. 651, 664 (1977). The organizations themselves are not subject to arrest or conviction and there are no allegations that any members or individual Plaintiffs have been arrested or convicted under the provisions of HB 1.

Additionally, HB 1 simply specifies a procedure for bail and imposes or modifies penalties for the crimes addressed therein, neither of which is a violation of the Eighth Amendment.  Indeed, the Eighth Amendment "says nothing about whether bail shall" even "be available"; rather, it "provide[s] that bail shall not be excessive in those cases where it is proper to grant bail." *Walker v. City of Calhoun*, 901 F.3d 1245, 1258 (11th Cir. 2018) (quoting *U.S. v. Salerno*, 481 U.S. 739, 752 (1987) (quotations omitted). And Plaintiffs make no allegation that they have been subject to excessive bail.

Based on the foregoing, Count II fails as a matter of law.

C. **Plaintiffs Failed to State a Claim Under the Fourteenth Amendment**

A statute is void for vagueness if it (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" and (2) "authorizes or even encourages arbitrary and discriminatory enforcement." *Wollschlaeger v. Governor*, 848 F.3d 1293, 1320 (11th Cir. 2017). A statute should inform the regulated parties of what is required of them and provide guidance to those who enforce the law so they do not act in an arbitrary or discriminatory manner. *Id.*; *City of Chicago v. Morales*, 527 U.S. 41, 60 (1999) (the legislature must establish minimum guidelines to govern law enforcement).

Importantly, in a facial challenge, a law only violates due process if it is impermissibly vague in all applications. A statute is facially vague when it is "utterly devoid of a standard of conduct so that it 'simply has no core' and cannot be validly applied to any conduct. *Id.* (quoting *United States v. Powell*, 423 U.S. 87, 92 (1975)).

While Plaintiffs assert a vagueness challenge, they fail to identify any specific language in HB 1 that is "vague." Instead, they allege that HB 1 generally fails to give notice about what conduct constitutes engaging in a "riot" or acting in "furtherance of a riot" and that because of this, HB 1 invites arbitrary and discriminatory enforcement.  Doc. 5 at ¶ 70.

But a review of the history and prior application of the riot statute dispels any arguments as to vagueness of these terms. Prior to HB 1, the common law definition of "riot" was utilized when applying section 870.01(2). A "riot" was defined as a "tumultuous disturbance of the peace by three or more persons, assembled and acting with a common intent, either in executing a lawful private enterprise in a violent and turbulent manner, to the terror of the people, or in executing an unlawful enterprise in a violent and turbulent manner." *Beasley*, 317 So. 2d at 752.

The courts have repeatedly applied this common law definition without any issue of vagueness. *See, e.g.*, *City of Daytona Beach v. Brown*, 273 So. 2d 124 (Fla. 1st DCA 1973); *Bayes v. State*, 454 So.2d 703 (1st DCA 1984); *Mack v. State*, 463 So.2d 344 (2d DCA 1985). And the Florida Supreme Court, in *Beasley*, found that section 870.01(2) was not unconstitutionally vague. The court stated, "[w]e believe that citizens understand the term "riot" to mean a group acting defiantly and unlawfully in a violent manner." *Beasley*, 317 So. 2d at 753.

HB 1's changes to the term "riot" does not render section 870.01(2) impermissibly vague. HB 1 does not remove the necessity to act in a violent manner. It reiterates the necessary component of violence by replacing the term "tumultuous disturbance" with "violent public disturbance." It further reinforces that being in the mere presence of a riot is not sufficient—the person

must "willfully participate" in the "violent public disturbance." Plaintiffs offer no explanation as to how this more specific definition fails to provide them with a reasonable opportunity to understand what the law prohibits.

Plaintiffs' allegations that the phrase "furtherance of a riot" is void for vagueness is also without merit. The use of the phrase "in furtherance of" is often used in the criminal context and has not posed any trouble for courts. *See, e.g.*, Fla. Stat. § 782.04(1)(a)(2)(r) (defining murder as the unlawful killing of a human being when committed by a person perpetrating or attempting to perpetrate a felony that is an act of terrorism or is in furtherance of an act of terrorism); Fla. Stat. § 810.061(2); *Jacobs v. State*, 396 So. 2d 713, 716 (Fla. 1981).

## CONCLUSION

Based on the foregoing, Plaintiffs Amended Complaint should be dismissed.

> Respectfully submitted,
>
> **ASHLEY MOODY**
> **ATTORNEY GENERAL**
>
> */s/ Anita J. Patel*
> Anita J. Patel, Esq.
> Senior Assistant Attorney General
> Fla. Bar No.: 0070214
> Office of the Attorney General
> The Capitol - PL 01
> Tallahassee, FL 32399-1050
> (850) 414-3694

Anita.Patel@myfloridalegal.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed with the Court's CM/ECF system, which provides notice to all parties, on this 1st day of June, 2021.

*/s/ Anita Patel*
Anita J. Patel, Esq.