UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LEGACY ENTERTAINMENT &
ARTS FOUNDATION, INC. d/b/a
LAWYERS MATTER TASK FORCE;
BLACK LIVES MATTER TAMPA,
LLC; COMMUNITY
EMPOWERMENT PROJECT, INC.;
and LEWANNA GELZER,

      Plaintiffs,

v.

RONALD DION DESANTIS, in his
official capacity as Governor of
Florida; ASHLEY BROOKE
MOODY, in her official capacity as
Attorney General of Florida; and
JOHN WILLIAM MINA, in his
official capacity as Sheriff of Orange
County, Florida,

      Defendants.
_____/

Case No. 6:2021-cv-00698-PGB-DCI

**GOVERNOR DESANTIS' MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT AND
INCORPORATED MEMORANDUM OF LAW**

At issue in this case is whether Florida's recently enacted Anti-Riot Law violates Plaintiffs' First, Eighth, and Fourteenth Amendment rights under the U.S. Constitution. Because the Governor is an improper party, Plaintiffs lack standing, and Plaintiffs fail to state a claim upon which relief can be granted,

Governor DeSantis moves to dismiss Plaintiffs' Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6).

## **INTRODUCTION**

Following a year where demonstrations across the country turned violent, Florida passed House Bill (CS/HB) 1, also referred to as the Anti-Riot Law ("Act"),[1] to protect against dangerous rioting and looting. Plaintiffs Legacy Entertainment & Arts Foundation, Inc. d/b/a Lawyers Matter Task Force, Black Lives Matter Tampa, LLC, Community Empowerment Project, Inc., and Lewanna Gelzer (collectively, "Plaintiffs"), ask this Court to enjoin enforcement of the Act based on unfounded, misleading, and conclusory allegations of Constitutional violations.[2] But the Act does none of the things Plaintiffs allege. Americans have a Constitutional right to free speech — they do not have a right to burn down buildings, destroy property, or inflict bodily harm on others.

First, Plaintiffs claim the Legislature drafted the Act specifically to target and prohibit "protests against the murders of minorities at the hands of

---

[1] HB 1 is a public record, which is subject to judicial notice. *See, e.g., Smith v. Sec'y of Veterans Affairs*, 808 F. App'x 852, 853 (11th Cir. 2020) ("When ruling on a Rule 12(b)(6) motion to dismiss, the district court is permitted to take judicial notice of public records without needing to convert the motion into a motion for summary judgment[.]" (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1276-78 (11th Cir. 1999)).

[2] Plaintiffs also filed an "emergency" ex parte Motion for Preliminary Injunction and Temporary Restraining Order. (Doc. 14). This Court quickly, and properly, denied the motion because "Plaintiffs' analysis of the particular constitutional issues presented here is too thin and conclusory to justify the extraordinary remedy of a TRO." (Doc. 16, p. 3-4). As discussed further below, Plaintiffs' Amended Complaint suffers from the same fatal flaws.

police officers." (Doc. 5, ¶ 26).[3] The Act's plain text, however, applies equally to every protest or demonstration where participants choose to incite or enact violence, damage property, or intimidate others, regardless of why they are protesting. The Act does not mention the protests themselves, or their motivations, because under the Act it does not matter who protests, or why, only that they do so peacefully.

Second, Plaintiffs allege the Act impermissibly burdens and "chills" peaceful demonstrations and free expression. (Doc. 5, ¶ 42). Incredibly, Plaintiffs even claim the Act "intimidat[es] protestors or organizations from participating in protests," "discourag[es] any support of peaceful protest," and "effectively bar[s] Plaintiffs from exercising their free speech rights because of the resulting penalty." (Doc. 5, ¶¶ 1 & 31). None of this is true.

The Act does not discourage, much less prohibit, any person from peacefully assembling, demonstrating, or speaking on any issue. The Act does not even apply to peaceful demonstrations or forms of expression. Rather, it outlaws people coming together, regardless of their motivation, to commit violence, damage property, or intimidate others into assuming or abandoning a viewpoint against their will. Prohibiting violence and destruction does not

---

[3] Docket entries in this proceeding appear as "Doc. __."

restrict Constitutionally protected expression – only dangerous, unlawful behavior.

Third, Plaintiffs claim they "fear criminal prosecution . . . for organizing demonstrations" because the Act allegedly threatens peaceful protestors with civil and criminal liability for exercising their Constitutional rights. (Doc. 5, ¶ 64). Here, Plaintiffs continue their conclusory rhetoric without pleading a scintilla of evidence to support this claim. Again, the Act is clear that its provisions only prohibit, and thereby attach liability to, persons that engage in or incite violence, destroy property, or intimidate others. Its provisions explicitly "do[ ] not prohibit constitutionally protected activity[,] such as a peaceful protest." Fla. Stat. § 870.01. Accordingly, persons exercising their Constitutional rights without also doing these illicit things face no criminal or civil liability, regardless of their viewpoints. Moreover, the Act does not create new crimes. Instead, it codifies the common law elements for multiple, existing offenses and increases penalties for defined crimes to deter violent demonstrations and protect property.

Fourth, Plaintiffs insist the Act makes "organizations liable for their association with, and speech regarding, individuals who may be arrested at a riot." (Doc. 5, p. 27). Again, Plaintiffs are clearly wrong. Nowhere does the Act discuss – much less impose – any form of vicarious or organizational liability, and certainly not for simply associating with persons "arrested at a riot." *Id.*

4

Indeed, the Act only refers to "organizations" in order to strike unrelated permitting requirements for 501(c)(3) organizations.

Fifth, Plaintiffs argue the Act immunizes counter-protestors that "drive into peaceful demonstrators if such demonstration blocks a road." (Doc. 5, ¶ 33). This claim is inflammatory and demonstrably false. Nothing in the Act allows people to drive into demonstrators, nor does it provide blanket criminal or civil immunity to anyone. Rather, it creates an *affirmative defense* for defendants sued for damages sustained while the plaintiff incited or participated in a riot. Drivers confronted by an angry mob need not sit idly by while the rioters obstruct traffic, damage their vehicle, threaten their safety, or worse. This provision allows those caught in violent or life-threatening situations to protect themselves and their property – not to attack protestors with impunity.

Finally, Plaintiffs allege the Act imposes "cruel and unusual" punishment by "depriving a presumably innocent citizen of the right to assemble, the right to timely bail, and a right to punishment that has not been arbitrarily enhanced," and by "imposing unconstitutional financial penalties on persons without . . . due process of law" (Doc. 5, ¶¶ 59, 67). Again, Plaintiffs are clearly wrong.

The Act does none of those things. It imposes no financial penalties. It simply amends and increases existing penalties for instigating or participating

in a riot or other violent demonstration. Likewise, delaying bail until after the accused appears before a judge cannot credibly be confused with cruel and unusual punishment.

Nonetheless, despite the Act's plain language and clear Constitutional protections, Plaintiffs filed this action alleging it is unconstitutional on its face and as applied to their "planned protests"[4] because it violates the First, Eighth, and Fourteenth Amendments to the U.S. Constitution.

This Court, however, does not have subject matter jurisdiction over the claims against Governor DeSantis because he is not a proper party. Likewise, Plaintiffs do not have standing to bring the action. But even if the Court had jurisdiction, and even accepting their baseless allegations as true, Plaintiffs still fail to state a claim upon which relief can be granted. Accordingly, this Court should dismiss the Amended Complaint.

## **LEGAL STANDARDS**

Federal Rule of Civil Procedure 12(b)(1) requires federal courts to dismiss a complaint if it does not establish "a basis of subject matter jurisdiction." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).[5] Further, to withstand a motion to dismiss under Rule 12(b)(6), "a

---

[4] Governor DeSantis notes that Plaintiffs' protest on May 15, 2021 – the source of their as-applied challenge – took place without incident.
[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted all decisions of the Fifth Circuit decided before September 31, 1981.

complaint must include 'enough facts to state a claim to relief that is plausible on its face.' " *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although the Court must accept well-pleaded facts as true and construe them in the light most favorable to Plaintiffs, "a plaintiff's obligation to provide 'the grounds' of his 'entitle[ment] to relief' requires more than mere labels or conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Twombly*, 550 U.S. at 555. Pleadings that are "no more than conclusions[] are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

## ARGUMENT

Plaintiffs bring this pre-enforcement challenge to HB 1 against Governor DeSantis in his official capacity and ask this Court to enjoin him from enforcing the Act. This Court, however, must dismiss Plaintiffs' claims because (1) Governor DeSantis is not a proper party, (2) Plaintiffs do not have standing, and (3) Plaintiffs' claims fail to state a claim upon which relief can be granted.

I. **THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE GOVERNOR DESANTIS IS NOT A PROPER PARTY.**

Under the Eleventh Amendment, "a state may not be sued in federal court unless it waives its sovereign immunity or its immunity is abrogated by an act of Congress under section 5 of the Fourteenth Amendment." *Osterback v. Scott*, 782 F. App'x 856, 858 (11th Cir. 2019) (quoting *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011)) (internal quotation marks omitted). Neither has occurred. The State of Florida has not waived its sovereign immunity, *see Gamble v. Fla. Dep't of Health & Rehab. Servs.*, 779 F.2d 1509, 1513-20 (11th Cir. 1986), and Congress has not abrogated state sovereign immunity. *See Qill. V. Mich. Dep't of State Police*, 491 U.S. 58, 68-71 (1989). Plaintiffs fail to allege otherwise.

Further, although *Ex parte Young*, 209 U.S. 123 (1908), provides a narrow exception to state sovereign immunity for suits "alleging a violation of the federal constitution against a state official in his official capacity for injunctive relief on a prospective basis," *Osterback*, 782 F. App'x at 858 (quoting *Grizzle*, 634 F.3d at 1319), Plaintiffs may not simply "challenge a state law by choosing whichever state official appears most convenient and haling them into federal court." *Support Working Animals, Inc. v. DeSantis*, 457 F. Supp. 3d 1193, 1208 (N.D. Fla. 2020). Instead, litigants must bring their claims "against the state official or agency responsible for enforcing the allegedly

8

unconstitutional scheme." *Osterback*, 782 F. App'x at 858-59 (internal quotation marks omitted) (quoting *ACLU v. Fla. Bar*, 999 F.2d 1486, 1490 (11th Cir. 1993)); *see also Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1248 (11th Cir. 1998) ("[W]here the plaintiff seeks a declaration of the unconstitutionality of a state statute and an injunction against its enforcement, a state officer, in order to be an appropriate defendant, must, at a minimum, have some connection with enforcement of the provision at issue.") This is because "[w]here the named defendant lacks any responsibility to enforce the statute at issue, the state is, in fact, the real party in interest, and the suit remains prohibited by the Eleventh Amendment." *Osterback*, 782 F. App'x at 858-59 (internal quotation marks omitted) (quoting *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1341 (11th Cir. 1999)).

Accordingly, "[u]nless the state officer has some responsibility to enforce the statute or provision at issue, the 'fiction' of *Ex parte Young* cannot operate." *Support Working Animals*, 457 F. Supp. 3d at 1208 (internal quotation marks omitted) (quoting *Summit Med. Assocs.*, 180 F.3d at 1341); *see also Curling v. Sec'y of Georgia*, 761 F. App'x 927, 932 n.3 (11th Cir. 2019) (holding that defendants must directly enforce or administer the challenged state statute for the *Ex parte Young* "legal fiction" to apply).

Governor DeSantis' status and authority as Governor of Florida do not, as a matter of law, make him a proper party to this case. Plaintiffs note

9

generally that Governor DeSantis, pursuant to Fla. Stat. § 14.01, et seq., "is responsible under Florida law for ensuring 'the laws be faithfully executed' and has the 'authority to protect life, liberty, and property.' " (Doc. 5, ¶ 11). That is not enough.

The Eleventh Circuit has made clear that the Governor's general executive authority to enforce state laws and oversee the executive branch, standing alone, "is insufficient to make him the proper party whenever a plaintiff seeks to challenge the constitutionality of a law." *Harris v. Bush,* 106 F. Supp. 2d 1272, 1276 (N.D. Fla. 2000) (collecting multiple cases supporting this principle); *see also Women's Emergency Network v. Bush*, 323 F.3d 937, 949 (11th Cir. 2003) ("A governor's 'general executive power' is not a basis for jurisdiction in most circumstances."); *Osterback*, 782 F. App'x at 859 ("[T]he Governor's constitutional and statutory authority to enforce the law and oversee the executive branch do not make him a proper defendant under *Ex Parte Young*.") Similarly, the Governor's enactment authority, by itself, does not subject him to this Court's jurisdiction because "[u]nder the doctrine of absolute legislative immunity, a governor cannot be sued for signing a bill into law." *Women's Emergency Network*, 323 F.3d at 950 (citing *Supreme Ct. of Va. v. Consumers Union of United States, Inc.,* 446 U.S. 719, 731–34 (1980)). Otherwise, the Governor would be a proper defendant in any challenge to a state statute. *Women's Emergency Network*, 323 F.3d at 949 (citing *Harris*, 106

F. Supp. 2d at 1277) ("If a governor's general executive power provided a sufficient connection to a state law to permit jurisdiction over him, any state statute could be challenged simply by naming the governor as a defendant.").

Because neither the Act's text nor his general executive authority "sufficiently connect[s] him with the . . . enforcement" of its provisions to "make him a proper party," *Ex parte Young*, 209 U.S. at 161, Governor DeSantis does not fall under the *Ex parte Young* exception and is therefore immune from suit under the Eleventh Amendment. Accordingly, the claims against him should be dismissed.

## II.    PLAINTIFFS DO NOT HAVE STANDING

Governor DeSantis adopts and incorporates Attorney General Moody's arguments on Plaintiffs' standing as set forth in her Motion to Dismiss and Incorporated Memorandum of Law.

## III.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Governor DeSantis adopts and incorporates Attorney General Moody's arguments on the merits of Plaintiffs' claims as set forth in her Motion to Dismiss and Incorporated Memorandum of Law.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the Amended Complaint because (1) Governor DeSantis is not a proper party, (2) Plaintiffs do not have standing to bring their claims, and (3) Plaintiffs' claims fail to state a claim upon which relief can be granted.

Respectfully submitted this 1st of June, 2021.

**RON DESANTIS**
**GOVERNOR**

/s/ *Nicholas J.P. Meros*
JAMES W. UTHMEIER (FBN 113156)
*General Counsel*
NICHOLAS J.P. MEROS (FBN 120270)
*Deputy General Counsel*
EXECUTIVE OFFICE OF THE GOVERNOR
The Capitol, PL-5
400 S. Monroe Street
Tallahassee, FL 32399
Phone: (850) 717-9310
Facsimile: (850) 488-9810
James.Uthmeier@eog.myflorida.com
Nicholas.Meros@eog.myflorida.com
Gov.legal@eog.myflorida.com

*Counsel for Governor Ron DeSantis*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via the Court's CM/ECF system, which provides notice to all parties, on this 1st day of June, 2021.

/s/ *Nicholas J.P. Meros*
NICHOLAS J.P. MEROS
Deputy General Counsel
